**BOXROLLIUM OIL CO. v. SMITH et al.**

**No. 576.**

District Court, S. D. Texas, Houston Division.
Aug. 8, 1933.

Hirsch, Susman & Westheimer, of Houston, Tex., for plaintiff.

James V. Allred, Atty. Gen., Willis E. Gresham and Maurice Cheek, Asst. Attys. Gen., Terry, Cavin & Mills, of Galveston, Tex., and Andrews, Streetman, Logue & Mobley and T. A. Slack, all of Houston, Tex., for defendants.

Before HUTCHESON, Circuit Judge, and GRUBB and KENNERLY, District Judges.

**PER CURIAM.**

This is a hearing before a court constituted under section 380, 28 USCA, of plaintiff's application for interlocutory injunction, restraining the enforcement of an order of the Railroad Commission of Texas of July 5, 1933, limiting and prorating the production of petroleum oil from the wells in the Strake or Conroe oil field in this division and district.

Plaintiff, a citizen of Texas, in its original bill, filed May 11, 1933, complained of the Railroad Commission of Texas, two of its agents, the Attorney General of Texas, the Beta Oil Corporation, an oil pipe line corporation, the Gulf Colorado & Santa Fé Railroad Company, and the International-Great Northern Railroad Company, railroad corporations, all citizens of Texas, and attacked as void and as in violation of and contrary to the Federal Constitution orders of the Railroad Commission promulgated and issued February 27, 1933, and April 28, 1933, having for their purpose the prevention of physical waste of petroleum oil and gas in such field, under the Conservation Laws of Texas (Acts 1932, Fourth Called Session, chapter 2, of Legislature of Texas [Vernon's Ann. Civ. St. arts. 6014, 6014a, 6029, 6049c, 6049d]). Such orders having been superseded by a similar order of the Commission promulgated and issued July 5, 1933, plaintiff, July 21, 1933, filed its supplemental bill, similarly complaining of such order of July 5, 1933.

1. The Commission's order of July 5, 1933, was (as were the former orders) issued and promulgated under and by virtue of the conservation laws of Texas to prevent physical waste of petroleum oil and gas in such oil field, and regulated, limited, and prorated the production of petroleum oil in such field, and specifically fixed the allowed production of each producing well therein.[1] Plaintiff is the

---

[1] The Commission's order of July 5, 1933, is as follows: "Special Order Promulgating Certain Rules and Regulations for the Conroe or Strake Field, Montgomery County, Texas, and Allocating to the Various Wells Therein the Maximum Amount of Oil to be Produced from Said Wells.

"Pursuant to an order entered in above cause on June 1, 1933, the Railroad Commission of Texas has caused to be made the tests of the flow of key wells in the Conroe field as specified in said Order through one-quarter inch positive chokes for a period of twenty-four hours, and at a hearing held according to proper notice at Houston, Texas, on June 30, 1933, has heard evidence as to the relative producing ability of the wells in said field based upon the tests of such key wells and is of the opinion based upon said evidence, that, while said tests may and probably are not all that may be desired, they are such as to reflect with substantial accuracy as nearly the flowing rates or capacities of said wells as

owner of an oil and gas mining lease, covering five acres of land in such field, upon which it has, at large expense, drilled, and owns, a well producing petroleum oil, and such order fixes the allowable production of such well.

can be obtained with safety to said wells and to said field.

"It appearing also that said Commission has heretofore adopted regulations providing for the spacing of wells in said field in the interest of the preservation of life and property and the prevention or minimizing of waste of crude oil and natural gas in said field and is of the opinion that the spacing of wells thus provided for is essential and should be strictly enforced and that in the absence of sufficient data on sand thickness of the producing horizon in said field and other possible desirable factors for use in governing the apportionment of the production of said field among the various owners of the mineral estate therein, and until such factors may be ascertained and reported to the Commission by its engineers, the acreage assigned to each well should be used as one of the factors governing such apportionment.

"Therefore, it is ordered by the Railroad Commission of Texas that, effective at seven o'clock A. M., July 7, 1933, Rule 24 of the rules and regulations heretofore adopted to govern the production of oil from said field be, and the same is hereby cancelled, and, until otherwise changed, modified or amended by the Commission the following regulations shall govern the production of oil from all wells in the Conroe area or field, regardless of the sand from which the oil is produced:

"1. The Commission finds that the daily potential flowing capacity through a one-quarter (¼) inch positive choke of the various wells located in the Conroe or Strake field is as set out in the schedule attached hereto, marked 'Exhibit A' and made a part hereof.

"2. It is ordered that during the period covered by this order no owner, operator or manager of any well listed and set out in Exhibit A attached hereto and made a part hereof, shall produce from any wells so listed and set out in said Exhibit A an amount of oil in any one calendar day in excess of Fifteen and Seventy-three hundredths (15.73) per cent of its rated potential flowing capacity through a one-quarter (¼) inch positive choke, as set forth in said schedule, plus such additional amount as said well shall be entitled to produce by reason of the number of acres on which it is located. In addition to the amount of oil which each well shall be entitled to produce on account of its potential flowing capacity, as above set forth, each well shall be entitled to produce an additional number of barrels, such additional amount to be based upon a consideration of the number of acres upon which said well is located, and as set forth in the following table:

| Acreage Assignable to Subject Well | Allowable Production of Well in Barrels. |
|---|---|
| 1 | 16.5 |
| 2 | 20.0 |
| 3 | 23.0 |
| 4 | 26.5 |
| 5 | 30.0 |
| 6 | 33.0 |
| 7 | 36.5 |
| 8 | 40.0 |
| 9 | 43.0 |
| 10 | 46.5 |
| 11 | 50.0 |
| 12 | 53.0 |
| 13 | 56.5 |
| 14 | 60.0 |
| 15 | 63.0 |
| 16 | 66.5 |
| 17 | 70.0 |
| 18 | 73.0 |
| 19 | 76.5 |
| 20 | 80.0 |

Such order recites, and the evidence here shows, that the allowable production from each well in such field, including plaintiff's well, was reached and arrived at (after a hearing before such Commission) in the following manner:

(a) Tests of the flow of certain key wells in such field through a one-fourth inch positive choke were taken for a period of twenty-four hours, and evidence heard as to the relative producing ability of the wells in such field, based upon such tests, and thereby the potential flow and production for each well in the field was ascertained and fixed. The order then permits a daily production from each well of not to exceed 15.73 per cent. of such potential flow and production.

(b) In addition to such daily production upon such basis, such order provides that each well shall be entitled to produce daily an additional number of barrels, to be based upon a consideration of the number of acres upon which such well is located, as set forth in the table contained in such order.

"For example, a well located on a five (5) acre lease shall be entitled to produce Fifteen and Seventy-three Hundredths (15.73) per cent of its rated potential flowing capacity through a one-quarter (¼) inch positive choke, as shown in Exhibit A, plus Thirty (30) barrels of oil. A well of the same flowing capacity on a ten (10) acre lease shall be permitted to produce Forty-six and one-half (46.5) barrels per day in addition to Fifteen and Seventy-three Hundredths (15.73) per cent of its rated potential flowing capacity. A well on a twenty-acre lease shall be entitled to produce Eighty (80) barrels of oil per day in addition to Fifteen and Seventy-three Hundredths (15.73) per cent of its rated daily potential flowing capacity. Provided, however, that no well in said field shall be restricted by the operation of this order to a daily production of less than twenty (20) barrels. No well in said field shall have assigned to it more than Twenty (20) acres.

"3. Owners and operators of wells which are completed after the beginning date of this order, shall, upon the completion of said wells, notify the Deputy Supervisor of the Railroad Commission at the office of the Commission at Houston, Texas, of the completion of said wells. The Commission will cause to be made a test of the daily flowing capacity through a one-quarter (¼) inch positive choke of said wells in the same manner that tests have heretofore been made of key wells in said field, and such wells shall thereafter be permitted each day, during the life of this order, to produce Fifteen and Seventy-three Hundredths (15.73) per cent of the rated potential daily flow of such well as ascertained by test, plus the additional amount assignable to such well under the table above set out, based upon the acres in the lease upon which it is situated.

"It is further declared to be the intent and purpose of the Commission to consider each well and tract in the field separately and individually and that no inequality shall exist as to any operator upon account of the rated daily flowing capacity of such well, assigned to it by the Commission, or the number of acres assigned to it by the Commission, and in such an event the Commission reserves the right to make such adjustments and corrections as are necessary and proper to give to such operator the amount of oil he is entitled to produce from his wells, compared to the other wells located in said field."

Under such order, plaintiff's well located as stated on five acres of land may produce not exceeding 83.4 barrels of oil, on the basis of its potential production, and not exceeding 30 additional barrels of oil (making a total of 113 barrels) based upon a consideration of such well being upon a five-acre tract.

Plaintiff's complaint is, not that the Commission is without power to so regulate the production from such wells in such field, nor that they should not be regulated. Neither is such complaint as to the whole method of regulation, but only as to a part of such method, in that plaintiff does not complain of the fixing of the allowed production of plaintiff's well, and/or other wells in the field, upon the basis of the potential production of such wells, but complains of the additional allowed production from such wells based upon a consideration of the number of acres upon which such well or wells are located. It thus accepts the Commission's order in part, and complains of it in part as being in violation of the Federal Constitution, etc.

It is unnecessary, however, to decide, and we do not decide, this and other questions which plaintiff brings forward and presses upon us, because we find from the evidence now before us that the plaintiff does not show such injury by and from the final results obtained by the use of the Commission of the method complained of as makes out a case for interlocutory injunction. While it is true that, by various comparisons and methods of figuring, some minor inequalities may be shown, it is also true that plaintiff's allowable production is materially increased by the use of the method complained of; its allowable production is larger per acre than the allowable production of the wells of others on larger tracts in such field; and its allowable production is as large as that of other wells on five-acre tracts. Taken as a whole, the evidence fails to make out a case for equitable relief against the Commission's order.

2. The evidence shows that in such field, at the date of the promulgation of such order (of July 5, 1933), and for some weeks prior thereto, and since, there has existed a wild and uncontrolled well, which has cratered, and there is flowing into such crater large quantities of oil, and from which crater there is being taken, salvaged, and sold approximately from 4,000 to 9,000 barrels of oil per day, which is greatly in excess of any allowable production from plaintiff's well, or any other well in the field. Plaintiff complains that the Commission, in promulgating its order, failed to take into account such wild well, and the production being obtained therefrom, or that, if it took it into account, proper consideration was not given it, and that therefore the Commission's order is void and noneffective, and is in violation of plaintiff's rights under the Federal Constitution, etc.

Even if we should agree generally with plaintiff's view that the Commission should take this situation into account, the evidence taken as a whole, including the distance plaintiff's well is situated from such wild well, fails to show such injury to plaintiff as would entitle it to ask equitable relief. It is not a sufficient ground for the exercise of equitable jurisdiction to restrain action to show generally that action is unlawful. Plaintiff must make out a case of irreparable injury to itself.

It follows that the interlocutory injunction must be refused and an order may be drawn and presented accordingly.